Let's have the clerk call the case. 325-0066, the people of the state of Illinois, Appalachia by Gary Genetovic versus Aloysius A. Alexander, appellant by Joseph Benack. Mr. Benack, if you're ready to proceed. Yes. Good morning, your honors. As discussed, my name is Joseph Benack, the office of the state appellate defender. I'm here on behalf of my client, Aloysius Alexander. Alexander has raised two issues on appeal. As to his first claim, Alexander's post-conviction petition made a substantial showing that his trial counsel was ineffective for interfering with his right to substitute a judge pursuant to section 114-5. To begin with, I just want to give a brief background on some of the relevant facts. Alexander's case was originally assigned to Judge Roszak on 114-5, seeking to substitute Judge Roszak. Judge Roszak struck that motion because Alexander was represented by counsel. Then, about a year and a half later, Judge Roszak reassigned the case on his own motion to Judge Sarah Jones. Within 10 days of that reassignment, on June 16, 2016, counsel filed a motion pursuant to 114-5, seeking to substitute both Judge Jones and Judge Alessio Policondriotis. That same day, Alexander also filed a Pro Se 114-5 motion, which only listed Judge Jones. The case then went back before Judge Roszak for a ruling, and he reassigned the case to Judge Policondriotis. Despite the fact that Judge Policondriotis was listed in the motion, counsel did not say anything when it was reassigned to her. So 114-5 gives defendants the right to substitute two judges based on allegations that the judges are prejudiced against them. The motion has to be filed within 10 days of being placed on the judge's call, and if it is, then the court is required to reassign the case to a different judge. The court is not supposed to consider the merits of the motion. As long as it's filed within 10 days and contains an allegation of prejudice, the court essentially has to grant it. And if court fails to do so, then all subsequent proceedings from that point on are void. Now, as discussed, Alexander's petition alleges that his attorney was ineffective for failing to speak up when Judge Roszak reassigned the case to Judge Alessio Policondriotis. Specifically, he alleges that he demanded that counsel say something when the court assigned the case to Judge Policondriotis, but that counsel refused to say anything because he mistakenly that Alexander had already substituted two judges, Judge Roszak and Judge Jones, pursuant to 114-5, which was untrue. Judge Roszak recused himself or reassigned the case on his own motion. Now, Alexander explained in his petition that he filed the pro se motion listing only Judge Jones because he thought that he could assist in his defense and he was confused about the procedure for 114-5 motions and thought he could only list one judge. He never intended for his pro se motion to somehow supersede or withdraw counsel's motion. He wanted a ruling on that motion, the one listing Judge Policondriotis, and his claim is that he never got one because counsel interfered with his right to substitute Judge Policondriotis. These allegations are sufficient to make a substantial showing that counsel was ineffective. Counsel refused to speak up when Judge Roszak reassigned the case to Judge Policondriotis, even after Alexander demanded that counsel say something, and counsel's reasons for refusing to speak up were simply incorrect. He thought that Alexander had already substituted two judges, but the record shows that this was not true. The result was that Alexander was forced to go to trial in front of a judge who, specifically alleged, was prejudiced against him. This is the very situation that section 114-5 is intended to guard against. The Illinois Supreme Court has held that this section is intended to protect a defendant's right to a fair trial, and here counsel interfered with that right, and he did so based on an incorrect understanding of the facts. Therefore, Alexander has made a substantial showing that counsel was ineffective. Now, in its motion to dismiss Alexander's petition below, the state raised only one argument. It claimed that Alexander's claim is barred by reis judicata, but this court should reject that argument because Alexander's claim is based on off-the-record discussions that he had with his attorney. It is not the same claim that he broached at the preliminary Krankel inquiry or on direct appeal. Here, again, Alexander alleges that he told counsel during an off-the-record conversation that he did not feel comfortable going in front of Judge Alessio Policondriotis, and as discussed, he demanded that counsel say something, but counsel refused because he believed, incorrectly, that Alexander had already substituted two judges. Now, because all of this was outside of the record, direct appeal counsel could not have relied on it in arguing that the trial court erred by failing to appoint Krankel counsel on Alexander's post-trial claim regarding the assignment to Judge Policondriotis. Alexander's claim, current claim, is therefore not the same claim that as he raised on direct appeal for purposes of reis judicata, and the case law shows this. In Taylor, the Illinois Supreme Court held that the defendant's previously rejected claim was not barred by reis judicata because it was based on evidence outside the record that the defendant did not and indeed could not have presented on direct appeal. The court stated, rules of procedural default and reis judicata are relaxed where the facts pertaining to a post-conviction claim do not appear on the face of the record. In Bew, the court said something similar. It said that claims of ineffective assistance of counsel based on matters outside of the record are inappropriate for direct appeal and are best resolved through post-conviction proceedings. And lastly, in Moore, the appellate court found that the defendant's claim was not barred by reis judicata because it was based on evidence outside the record that he could not have submitted on direct appeal. The court stated that claims that are merely similar yet distinct are not barred by reis judicata, and that's the situation we have here. Alexander's current claim is similar to the Krenkel one that he raised on direct appeal, but it's distinct in that it is based on evidence that did not appear in the direct appeal record. And as for the Krenkel inquiry that was held below, Alexander did bring up the 114-5 motion listing Judge Policondriotis at the Krenkel inquiry. He pointed out to counsel and the court that that motion listed Judge Policondriotis, and it's true that Alexander did not reference his off-the-record conversations with counsel during the Krenkel inquiry, but many cases have held that defendant does not forfeit claims not raised at a Krenkel inquiry. And moreover in McGee, the appellate court held that the failure to fully elaborate on a claim at a Krenkel inquiry is not a basis for finding that it is rebutted by the record. Now, this issue is currently pending in the Illinois Supreme Court in Linen, but McGee and the other cases cited in Alexander's brief are well-reasoned and should be followed in this case. And moreover here, the court basically shut Alexander down when he brought up the fact that Judge Policondriotis was listed in the 114-5 motion. The court said, yes, I see my name there, but that doesn't mean anything, and then ended the hearing. So Alexander did not really have a full opportunity to present his claim, which distinguishes this case from Linen. So for all of those reasons, Alexander's claim is not barred by res judicata, it is not forfeited, and it is not rebutted by the record. Turning to Broussard, which the state cites, Broussard is distinguishable from this case. In Broussard, the Illinois Supreme Court found that defense counsel and the defendant abandoned the 114-5 motion when they failed to seek a ruling on it from the trial court. Here, Alexander concedes that counsel abandoned the motion. Indeed, it's his entire point on appeal. But the difference is that, unlike in Broussard, Alexander argues that counsel was ineffective for abandoning the motion, and he points to off-the-record conversations that he had with counsel that support this argument. Thus, unlike in Broussard, where the court found that the defendant had failed to overcome the, rebut the presumption that he had intended to abandon the motion, here Alexander has rebutted that presumption through his unrebutted allegations that counsel overrode his decision to substitute Judge Alessio Policondriotis, and that counsel did so based on an incorrect understanding of the relevant facts. Moreover, to the extent that Broussard imposes a personal duty on defendants, like Alexander, to personally assert their rights under 114-5, Alexander's petition explains why he did not do that in this case. And it's namely to go back to the very beginning when Judge Rozak told him that you cannot, that he could not file 114-5 motions on his own, that that decision was up to counsel, and he even struck Alexander's motion. You told him not to speak. I thought that was the discussion that came up about him speaking in court. No. There was a separate discussion about that, I believe, Your Honor, but the, what I'm referring to here is when Judge Rozak struck Alexander's motion and told him. I agree, but is there, the record says that Judge Rozak spoke to the defendant? Yes, he told, he spoke directly to Alexander at that point and said, I think he said after he struck the motion, he said, and now it's past 10 days, so you're stuck with me. Okay, you can go ahead. Yes, and so, yeah, so as Alexander explains in his petition, that's why he didn't say anything when the case was assigned to Judge Policondriotis and why he tried to address his concerns through counsel, who then refused to bring them to the detention. In addition to Broussard and Reyes-Uticada, the state also raises a number of factual issues. It claims that Judge Rozak actually did substitute himself, was actually substituted pursuant to 114-5, but there's no support in the record for that, and it also claims that it's not believable that Alexander would think that, you know, Judge Rozak striking his would then lead him to believe that he could not speak up later in trial. But this court should decline to consider those arguments because below, the state moved to dismiss solely on the basis of Reyes-Uticada, and by doing so, it eliminated all other factual inquiries. But moreover, the state's claim that there are factual issues to be resolved here really just shows why this case needs to go back for a third stage hearing, because that's the appropriate stage for resolving these kind of factual inquiries. So accordingly, this court should remand for third stage proceedings and the appointment of counsel. Alexander has made a substantial showing that counsel was objectively unreasonable for interfering with his right to substitute Judge Alessio Policondriotis, and his claim is not, as the state argued in its motion to dismiss, barred by Reyes-Uticada. Moreover, this court should find that Alexander is not required to make a substantial showing of prejudice based on counsel's interference with his right to substitute Judge Alessio Policondriotis. Two Illinois cases and one federal case have found otherwise, but those decisions are not well-reasoned and should not be followed here. As discussed, if the court improperly denies a 114-5 motion, then all subsequent proceedings are void, and there's no reason that the same analysis should not apply when the defendant's right is thwarted by his counsel's ineffectiveness. As mentioned earlier, the Illinois Supreme Court has found that Section 114-5 plays an essential prophylactic role in guaranteeing a defendant a fair trial. Again, then, it makes no sense that that right could be denied or defendant could be deprived of that right because of counsel's ineffectiveness. And accordingly, this court should follow the Illinois Supreme Court's long-held view that 114-5 should be construed liberally to promote rather than defeat substitution, and also the court's willingness to find reversible error when the statute is not so construed. It should, therefore, reverse and remand for third-stage proceedings in the appointment of new counsel. Turning to Alexander's second argument just briefly, in the alternative, this court should remand for further second-stage proceedings in the appointment of new counsel because post-conviction counsel was unreasonable for moving to withdraw. Rather than argue the merits of Alexander's claim, counsel moved to withdraw before the state had filed its motion to dismiss, based on her belief that Alexander's claim was barred by res judicata. Now, for the reasons already discussed, Alexander's claim is not barred by res judicata, but at the very least, it is arguably not barred by res judicata. And as long as defendant's claim has some arguable basis, counsel is not permitted to withdraw. Rather, under Rule 651c, she is required to present the claim in an appropriate form. And because counsel abandoned Alexander in this case rather than fulfill this duty, this court should find that she was unreasonable and remand for further second-stage proceedings in the appointment of counsel. That latter position would require us to find that res judicata doesn't apply, correct? I don't think that it would necessarily require that. It would just require you to find that there's some argument that res judicata should not apply. That's what I meant. I mean, yeah. Yes. And yes, correct, Your Honor. Thank you for stating it correctly. I appreciate it. Happy to help. Counsel, you said that our case is distinguished from Linen, so we don't have to wait for the Supreme Court's ruling? Yeah, Linen is distinguishable because there, the defendant really did have a full opportunity to flesh out the claim. And here, Alexander tried to bring up this claim and was told that it did not matter. So it no longer made sense at that point for him to, you know, present it. Thank you. Justice Peterson. I have no questions. All right. Thank you, Mr. Benek. I will turn it over to Mr. Gunitevic, and you'll have an opportunity to rebuttal. Thank you, Your Honor. May it please the Court, Counsel, Gary Gunitevic on behalf of the state. Quite frankly, I had something already all prepared and then listening to argument this morning. I'm not really sure where I should take and go with this, how I should take and proceed. But as Counsel was talking, one of the things that kind of came to mind was, believe it or not, the movie Sully with Tom Selleck. When the National Transportation Safety Board brought his case up to take and determine the efficacy of his actions, they originally looked at the matter in the abstract. They didn't account for reality. They didn't account for the in listening about the fact of how the allegation, the claim that is made that he spoke with his counsel, the argument that's presented wants this Court to look at the matter in the abstract. And if you think about it, if the allegation is simply the fact that, well, I spoke with counsel and I wanted counsel to do this and counsel didn't do this. If that was the litmus, then we wouldn't really need a second stage in the PC. Because at that point, the allegation, and as was already pointed out, because of the fact that it was found to state the gist of a constitutional claim, we should just overlook the second stage and go right to the third stage. Let's have a hearing. But that's not what the rules are. And that's record rebuts the allegations. The allegations in the petition do not have to be accepted as accurate. And in this case, what the state is asking the Court to do is in looking at the progression of everything here, and how everything kind of went off the rails, thanks to the defendant's own actions himself, outside that of his attorney, we can take and see that, what was the reality in the Court? What was Judge Rozak? What was Judge Jones? What was Judge Alicio Policondiotis? What were they faced with? What did they have to deal with in dealing with the defendant and his motions for SOJ? If we take and go back early on, as was already pointed out, defendant filed a pro se motion in the name of his then public defender. He filed it as though counsel had filed the motion. It wasn't signed, but he did that. And that was the motion that Judge Rozak struck. I believe it was about 16 days later. He didn't speak to defendant when he struck the motion. That's incorrect. What he did is 16 days later, he spoke with the defendant when he made an appearance. And he told the defendant, hey, look, you have an attorney, you can't file motions on your own. And you can't especially can't file in the name of the attorney. So I struck it. And yes, it had been more than 10 days. So yes, you're now stuck with me. Okay. So we then go down to June 9, the docket statement. On June 9, the docket statement, case came up for hearing. And what happened was, what the record shows is the record shows that Mr. Nopolsky says, Judge Aloysius Alexander, first of all, please, the court automatically 14 CF-2407 reassign to Judge Jones and Stanner. Mr. Nopolsky, thank you, judge. That's it. The docket statement indicates that that was a motion for substitution of judge. Now, again, looking at the reality, I don't think that a court clerk is going to be able to make that determination unless the clerk was told something, heard something or whatever. From what I've seen from all the records that I've read in my tenure with the appellate prosecutor's office, I have never seen a clerk make their own determination as to how to list something in the court docket. So anyway, we go on from there. Case gets sent up to- Now, so a couple of questions right here. First of all, where's this at in the record? Which one are you asking for? I'm talking about the, I assume that you're talking about the common law record where the clerk listed the substitution motion. Let's see if I can find it in my brief here. If you can't do it quickly, don't worry about it. I assume that- But counsel has suggested that he disagrees with your argument, so I'd like to know exactly where I'm supposed to look to support your argument. I might be able to find it here. And it's clearly identified in their brief. It is in the brief. I did cite it someplace, but- I don't want to stop your argument, counsel, so if my colleague seems confident that he's found it, I'll rely on him. If your honor would like, what I can do is I can supply the record site in a letter to the court after argument. I can find it if you would like that. That's fine. Okay. I will take him to that. So then we get on to June 9th, and then all of a sudden on June 16th, what we then have is, then we have a motion for substitution of judge file at, I think, about 10 30, 11 30 in the morning. Then later that same day, we have another motion for substitution of judge. The first one does cite Judge Jones and Judge Policandronidis. The second one just cites Judge Jones. And the comment has been made in the reply brief, well, the defendant's questioning why in the world I would need to take- know anything about all this simply because defendant stated, well, I filed a motion to substitute Judge Jones. I did that because I was confused. And as you can tell, if the court goes back to its original decision, original on the direct appeal, the court's decision is also- makes an assumption that is actually incorrect. In the opinion, the court wrote that the counsel filed the motion for Jones and Judge Policandronidis, and then thought there might have been a mistake. So they just filed one for Judge Jones. Well, as it turns out, and as the record now reflects correctly, the 10 30 motion was filed by counsel. The four o'clock one was filed by defendant pro se once again, pro se, under the name of counsel. Exactly what he was told not to do by Judge Roszak earlier on. He did it again. Now, the argument's been made that, well, he was told he can't do this, he can't do that. Well, the fact of the matter remains, for a defendant who claims that because Judge Roszak said something to him, he felt as though he couldn't do anything. He certainly bucked that order pretty darn quick. He filed it on June 16th, and then also before Judge Roszak earlier on, when his private counsel wanted to get a continuance, he spoke up. Imagine that, being told supposedly he can't speak, he can't do anything. He speaks up and says, I want a speedy trial. I demand my trial. So the reason why, again, I talk about the reality is, this is the reality of what's going on. The defendant, when he needs to speak, he knows when to speak. He knows he can speak. He's not inhibited. Even though he's told not to file a motion in the name of counsel, he files a motion in the name of counsel. So this is what we get down to now. We get into the matter of post-trial and Krankle. And after the court goes through all of the earlier going on to make sure that the assignment was proper, so there would be no problem, what we do is we get down to the business at the Krankle hearing, where Mr. Napolsky finally basically indicates that, well, the defendant has pointed out to me paragraph five. And paragraph five shows that they had named Judge Policondriotis along with Judge Dillington a motion. Well, what Judge Policondriotis then says is basically, she doesn't say, oh, well, that means nothing. Forget it. Okay. She says, yeah, obviously he raises my name. This is at 826 of the record. But when the matter was assigned to me, that was withdrawn. And each and every court date thereafter, he consented to the matter to be before the court. In fact, he waived his jury trial by Mr. Napolsky. In fact, he waived his jury trial and asked for a bench trial in front of me. Mr. Napolsky, that's correct. What happened here is what happened on June 16th, when the two motions were filed, the only motion that apparently was then presented as having taken effect and overridden the first one was the fact that there was only a request to remove Judge Jones as the only thing that was sent back to Judge Rozak and then assigned it to Policondriotis. The point of the matter is that, indeed, at that point, there was no motion to substitute Judge Policondriotis. There was none. And so after she goes through all of what had gone on and what had happened, she finds out that basically the assignment that has been made to her is proper. Defendant never files anything, even though we know he can because he has done it, despite the admonition by Judge Rozak. He nonetheless does that. If we take a look at what we have here, at least the record, people believe, rebuts the allegation about the conversation, rebuts the allegation that he wanted to take and get rid of Policondriotis. The common law record, the docket entry shows it as a substitution. If you take a look at the terse way in which this was done, it wasn't a recusal. Judge Rozak didn't recuse himself. It was reassigned. Why do you reassign a case? Mind you, yes, the state does indicate, does, you know, have to, if you will, concede the fact that there is nothing on the record that says that this is a motion by the judge to substitute. But the docket entry says that. And that indicates what was going on in the court at the time. So one of the arguments that we made is that there have been two substitutions of judges already made under 114-5. And on top of all of this, the other thing we have to keep in mind is the issue that is raised here is one of ineffective assistance. It's not a question of whether or not a motion for substitution of judge, automatic substitution of judge, as you will, was improperly denied by the trial court, where the prejudice for the judge wouldn't have to be shown. We are under Strickland. And Strickland requires not only deficient performance, but Strickland also requires prejudice. And the prejudice that has to be shown here, if there's a reasonable probability that a different trial judge would have reached a different conclusion. And I don't think that under the circumstances of this case, that defendant can establish prejudice. And I think it's a very dangerous road to go down for this court to say, well, because I wouldn't have to establish prejudice in a motion of substitute, that should carry over to my ineffective assistance. What you're basically doing is you're rewriting Strickland. You're rewriting and throwing out the prejudice prong of Strickland completely. And that I don't think is appropriate. We judged by the standards based on the issue that is raised. The issue that is raised is ineffective assistance of counsel. Two things, deficient performance, prejudice. Defendant hasn't established prejudice, hasn't shown that a different trial judge would have ruled differently. And I would venture to say not only in the trial, but also with respect to how this was developed and how the record shows itself. The record rebuts the allegation. And the allegation doesn't trump the aspect about when a record deflects or rebuts. That is a proper ground for a motion to dismiss. And I also would dare say that I do believe that the state can raise this. This is a question of, this is a question, not of fact of credibility or anything like that, that the label was placed on my argument. Rather, this is a legal argument that basically is talking about the sufficiency of the allegations in the petition. And when the record rebuts that, we can take and file that. We can make that argument for the first time on appeal. I see that my time is up. If there are any questions, I'll be happy to respond. And Your Honor, Justice Huddle, I will take and find that citation and I will provide a letter to you as one of the other justices. And I also will supply a copy to Mr. Binnick. Let's see if, first of all, if Mr. Binnick has a objection to that and maybe he can cite. I can tell you the site. Okay. C-192. It's the June 9th minute order. Thank you, Counselor. June 9th, 2016. Thank you, Justice Bertani for your great clerkship there. I had one question. I don't know if Justice Peterson had one. I do not. Justice Bertani, do you have any questions? I do not. Just the last part of your argument there. When an attorney fails to file a motion as of right for substitution, you're suggesting that Strickland requires that we show prejudice afterwards? Yes. No different than if he failed to file a motion to suppress. You still have to determine prejudice from that. It makes no difference. Failure to file a motion. It makes no difference that it's an automatic right. It's not. Okay. This is where Bruchaw comes in and this is the sticky wicket, so to speak. Automatic. They say it's an automatic right.  And the court distinguished, the court says the only thing that's automatic is the prejudice aspect of it. You can't question the prejudice aspect. So I know that other than the fact that most of these motions usually say what? They usually say, hey, Judge So-and-so is prejudiced against me. I feel this and that's all that they say. You can't question it. So the substitution gets granted. So I don't know that it's necessarily an automatic right. The automatic aspect, as the court in Bruchaw specifically delineated, only goes to the question of the prejudice problem. Now, if they allege other things in the motion and stuff like that, that they claim knowledge, but he's heard this case, he's heard that case. Okay. As part of the substitution motion, that's different. But I think that one has to be careful on how one treats this as a quote-unquote automatic right. As though, okay, as though now all of a sudden the prejudice aspect of ineffective assistance just goes away. I think that just like, again, excuse me, I'm sorry. Like any other motion, a failure to file a motion is a failure to file a motion. And when you do that, even in a motion to suppress, you got to establish what? You got to establish that there's grounds for the motion to suppress would have been granted. If you can't do that, then it's not an effective assistance. I think that same logic applies here just as well. I think you've answered my question, Mr. Knudvik. Thank you. Sorry it took so long. That's all right. Mr. Roboto, you got five minutes. Thank you, Your Honor. Counsel started by asking this court to imagine what the trial court was faced with here. But really, this is not about what the trial court did. This is about what trial counsel did or did not do. Just to get into briefly the Judge Rozak reassigning the case question. And it's possible that there was some sort of reassignment that didn't appear on the record. But what's clear is that that reassignment was not pursuant to 114-5, which is what really matters here. Because there was no pending 114-5 motion. And regardless, any motion at this point, this is a year and a half later, would have been well past the time limit for filing one. So regardless of what happened here, we know that this was not a 114-5 motion. Alexander had not substituted two judges pursuant to that section. Yeah, the state calls into question the credibility of Alexander's allegations about why he didn't speak up. I will say that it is somewhat interesting to note that the state, on the one hand, it faults Alexander for filing these pro se motions and trying to assert his right to 114-5. And then on the other hand, it faults him for not speaking up. So there seems to be some sort of inconsistency there. But regarding why Alexander filed that pro se motion, as I discussed, he explained that because he thought he could assist in his defense. He was confused about the process. He just wanted to make sure that something was on file. There's really no... Once he learned that counsel had filed his own motion, listing Judge Policandriotis, he told counsel that he wanted to go along with that motion. He was not comfortable going in front of her. And there's no indication then that he wanted his motion to supersede or withdraw counsel's motion. It doesn't really make sense that he would file a motion that was more restrictive, that only listed one judge rather than two. That doesn't seem to follow logically, necessarily. Does it follow logically that he wanted to get rid of two and only named one? Well, no. And that's as he explained, it was because he didn't know that he could list two. He thought that he could only list one. And there are certain circumstances when you can only list one. It's only because Alexander was subject to... I think it's because it was a Class X felony and he was... I understand that. Yes. And regarding, again, about Alexander's credibility, the state says that just because Judge Rozak told him he couldn't file these motions and he struck these motions that Alexander felt that he couldn't speak up. Judge Rozak specifically told him that that was counsel's job and struck the motion. So I don't... Our position that there's nothing incredible about his claim that he later would come to the conclusion that he couldn't speak up in open court. And the state brings up him demanding trial, but there's a pretty significant difference between saying, I demand trial and trying to argue, essentially, with counsel in open court and override counsel's decision. So as far as rebutting Alexander's claims, I don't think that that point is necessarily well taken. And just lastly, regarding Strickland, Alexander is not asking this court to rewrite the Strickland prejudice prong. It is actually not true that Strickland always requires a showing of prejudice. For instance, if counsel is ineffective for failing to file a speedy trial motion, then the remedy is the same as if the court erroneously denies the motion, which is that it's an outright reversal at that point. And so, you know, again, Alexander is not asking for anything. I think there's an analogy to be drawn there between the speedy trial statute and the 114-5 statute. Alexander, again, is not asking this court to rewrite Strickland. He's simply asking the court to construe the statute consistent with what the Illinois Supreme Court has said about its fundamental role in assuring a defendant a fair trial and also in the fact that it does result in all subsequent proceedings being void. And if your honors don't have any further questions, Alexander respectfully requests that they reverse his summary, reverse the dismissal of his petition, remand for third-stage proceedings and the appointment of new counsel, or alternatively, second-stage proceedings and the appointment of new counsel. Thank you, Mr. Venick. Justice Peterson, any questions? I do not. Justice Bertani? No, thank you. Gentlemen, I'm good with Justice Bertani's side. I looked at it here during rebuttal, and I think that's what I was looking for. So no need for letters. Thank you for your arguments today. We will take this matter under advisement and issue a written decision in due course.